25-33-23 John Petsche v. Jerry N. Hruby et al. Oral argument not to exceed 15 minutes per side. Mr. Baloch for the Plaintiff Appellant. Good morning and may it please the Court. My name is Zoran Baloch and I represent the Appellant Jack Petsche in this case. I will be reserving three minutes for rebuttal. Very well. We are asking the Court today to reverse the District Court's grant of summary judgment and remand for trial on Mr. Petsche's 1983 claims. The District Court's summary judgment ruling ultimately rests on one conclusion, that there was probable cause for Mr. Petsche's prosecution, which under Hartman v. Moore ordinarily precludes retaliatory prosecution claims. Well, I mean, just looking at the elements of the offense itself, as opposed to the affirmative, I'm sorry, offense itself, as opposed to the affirmative defense, would you agree that there was probable cause as to the elements of the offense? Your Honor, one thing I will quickly... How about yes or no, and then you can explain. No, because I do not agree that the subsection C of the statute is a definitional carve-out of what constitutes criminal liability. So if it doesn't meet... Give me a, like, section number... Yes, of course. Yes, so Ohio Revised Code 2921.42. Section A is what I believe you are referring to, Your Honor. Well, you might know better than I offhand, but I'm, you know, I'm thinking in terms of the elements of the offense, and then you have an affirmative defense to which you argue your client was entitled, right? Right, and Your Honor... I just want to narrow the scope of what is in dispute, if possible, and see whether you are contesting the existence of probable cause just as to the elements of the offense. On that point, I will point that the statute does require that the conduct be taken knowingly, and we will dispute that... Knowing as to what? As to having an interest in a public contract, an unlawful interest in a public project to move forward, correct? He did, Your Honor. So he knew that that would seem to be satisfied unless I'm missing something. And again, just as any other criminal statute, let's say, for instance, requires a conduct be taken intentionally or knowingly, that carves out the scope of what is considered to be criminal. It doesn't say that anyone who performs the act has violated the statute, and then the mens rea can be used as a affirmative defense. In the same way, we believe the statute was structured in the same way. If what he needed to know was his own interest in the contract, the existence of that interest, he undisputedly knew he had the roofing contract, subcontract, at the time he voted to allow the project to go forward, right? Yes, and I guess I would just say that that is not criminal under the statute so long as the elements of subsection C are met. To answer Judge Ketla's question, yes. He knowingly authorized a public contract in which he had an interest. That's what A1 requires. He did those things. He did that. Yes. Okay. So now we move to C. All right. That's what I was trying to... I'm sorry. Okay. So the question here is whether... I mean, you can show that he would... You can rebut the presumption of a legitimate prosecution with probable cause by demonstrating... You would have to demonstrate that this affirmative offense was available to your client, right? Yes. And again, regarding this affirmative defense issue... Well, I mean, is that... Let's just try to, you know, like have common ground and then we can talk about it. Is that correct? I'm just trying to, you know, lay out sort of the landscape here. Of course, Your Honor. Can you repeat your question? So I can answer it specifically. I think so. I'll try. So the question... The issue before us today is whether you have evidence that would show an entitlement on your client's part to the affirmative defense, right? Yes. Our position here is that there is evidence in the record that establishes that the exception created by subsection C of the statute would have applied but for the intentional withholding of that information from investigators. Okay. I don't see... Like just looking at the text of C, how that could be true because C makes all four of the sub parts of the affirmative defense... It's a conjunctive test. You have to satisfy all four. Would you agree with that? Yes. Okay. So then we move... I mean, one through three, there hasn't been a lot of talk about those. The focus has been on four. And with respect to that, I hear you to be arguing with respect to the first part of four, that there was evidence withheld that went to the issue of whether this was an arms-length transaction. Yes, with full knowledge of it. Without any nefarious intent on your client's part. The problem for you, I think, is that four then goes on to say, and for four to be satisfied, the public official must take no part in the deliberations or decision with respect to the contract. Whereas here we know that your client did indeed vote numerous times. So just on the plain text of four, how do you satisfy the take no part in portion of that affirmative defense element? Your Honor, my understanding of the deliberations and the taking part that Mr. Pecci was involved in was limited to approval of funding for the entire project, which any counsel person would have to do in order just to fund the government in general. I do not see that conduct in this situation as being in any way... With respect to the public contract in which he has an interest, and I thought you had already agreed with Judge Keflich that there was a public contract in which he had had an interest. So that's where I'm struggling with your argument with respect to probable cause. So what we would concede to is that he had the contract, that the contract existed. Where I would push back with you, Your Honor, on this point is this language should be construed more narrowly to be specific to that specific contract, not anything that is incidental to the contract. Otherwise a counsel person couldn't even do their job to fund the government if it incidentally leads to paying for the contract that he already has. This was a vote specific to allow a project to move forward. I mean it was specific to the very project in which your client had an interest. So that's quite different from just general welfare, so to speak, funding. I mean I'm hard pressed to see how this is just... I mean you just plainly can't meet that unless I'm missing something. Again, Your Honor, I would have to look at the specific conduct and the nature of those votes. It cannot be construed so broadly so as to prevent a counsel person from ever having a public contract because the statute is written in such a way that it clearly allows for it if certain safe harbor provisions are met. So to construe number four in such a way... You can't participate in the decision. You have to recuse. It's that simple. And the record does show that when a specific issue related to this contract, specifically the change order that affected the amount that Mr. Petsche himself would specifically receive from that contract was up for vote, he did at that point recuse himself from that discussion. So it does show that he did have the awareness that, hey, look, if this affects me personally, my contract personally, this statute says I can't vote on those things, he did recuse himself. But my understanding is of the things that he did participate in, allowing the larger project as a whole that he was simply a subpart of for the welfare of the state, of the city to go forward, I see that as a distinction that's worth making. And that's how I would reconcile it. I don't want to overlook Judge Gilman in this argument. Judge Gilman, do you have any questions you want to ask? I think I have the same concerns that have been voiced, that sub 4 talks about not voting on anything in which he has an interest. Well, he obviously has an interest in the building of the police station because there's not going to be a roof on it. The police station project can't proceed. I don't understand how you're answering that particular point. Well, I don't want to repeat myself. In that situation, to address those concerns, I think with the limited time I have left, I think it's important for us to turn then to the exception created by the Supreme Court in the city of Riviera Beach case, the Lozman case. Because even if probable cause is to be accepted or presumed in this case, which again we do challenge, but if it is, Lozman creates an equally important exception and basis for a reversal here. This case is remarkably similar to Lozman, both in fact and spirit. We have evidence of an official retaliatory policy by a municipality, by members of city council, who again we believe that the evidence that we've produced so far shows an intentional withholding of exculpatory information in order to ensure the prosecution of Mr. Pesci, which coincidentally happened just six days after his complaints about the Four Seasons project became public. Given the history of political dispute between the parties, simply put, we believe that Lozman applies here. And as a result, your probable cause concerns must be considered under that. All right, we'll see what your friend on the other side has to say. You'll have your rebuttal. Thank you, Your Honor. Good morning. May it please the Court, my name is Frank Scaldown and I represent the City of Brecksville Defendants. We of course ask the Court to affirm the District Court's grant of summary judgment. Turning toward the Lozman case, there is the plaintiff has not provided any case law that demonstrates that that applies to a retaliatory prosecution case. And there is no case law that supports that. The Sixth Circuit continues to hold the causation element and retaliatory prosecution context requires to prove prosecution lacked probable cause. It continues to do that. There's just no case law that supports that provision. Furthermore, in the Lozman case, in an executive session there was expressed testimony, a transcript of one or maybe more of the council people that say we want to use the power of the city to intimidate and to prohibit, to try and stop people from suing the city, which is very different than the case before the Court today regarding an ethics violation, a fine of an ethics violation by the commission, grand jury indictment, very different. So we don't think that applies. Certainly probable cause, there is very much an extreme added layer here for a plaintiff to overcome. I'd emphasize that the case law also puts forth that a plaintiff must bring forth substantial evidence to demonstrate that the conclusive presumption of probable cause does not apply to demonstrate that there was some false concealment or misleading concealment of material information regarding his prosecution. My friend on the other side mentioned a couple of things that he believes that that's satisfied. One of them was that six days after a public issue came forth, the Four Seasons issue came public, six days later the mayor's letter to the Ethics Commission was sent. I think that, well one, the Sixth Circuit has held that temporal proximity alone is rarely if ever sufficient to establish causation. That's the Halverton case in our briefing. But moreover, the district court did I think an excellent job of discussing that. The plaintiff had already voted on the issues regarding a subcontract. The mayor had been putting together that the plaintiff had a subcontract in July of 2018 and confirmed that to be the case in October 2008. So it was already under investigation. Those conclusions were already being made. So, and the city council's votes were all on the police project took place before the Four Seasons issues became public. You know, for the, I think it's a very difficult case for the plaintiff for the reasons that have previously been discussed. Some of the things also that were mentioned in the briefing and I'll touch on briefly were that there was some animosity toward him because he was of a different political affiliation than the majority of the council members or that he was a champion for transparency in government and somehow they were singling him out. But I would say that if you advocate strongly for transparency you would be more on notice that you would need to disclose a contract such as this. Especially with regarding multiple votes and the opportunities that he had to make that known. Well, let me ask you that. He says that though the mayor and the city and the law director already knew that he owned USA Roofing. Yeah, and I think the district courts hit on that correctly is that the issue isn't whether they knew that he owned the roofing company but the issue is whether they knew that he had a subcontract and that certainly hasn't been established. I guess with regard to, there were a variety of other claims that were made that have been waived. I'll just point them out quickly. The state law claim for malicious prosecution, fabrication of evidence under the 5th and 14th amendments. There was no argument that's waived under well established Sixth Circuit law. I'd further assert that there's another added layer of immunity. The individual defendants have qualified immunity. It's incumbent upon the plaintiff to demonstrate that there is clearly established law that unequivocally demonstrates beyond debate that they were violating the law by submitting an ethics, a letter to the ethics commission or providing information for the prosecution. I'd ask the court based on the trial court's ruling and the briefing to affirm the district court's order. Judge Gilman, any further questions? Nothing further, no. Thank you, sir. Thank you. We'll hear from both. Just a few quick points in response. Regarding the applicability of Lozman, I think it really is splitting hairs to say that Lozman only applies to retaliatory arrests and cannot possibly apply to retaliatory prosecutions. If you read the text of Lozman and what it was trying to protect, the remedy it was trying to create and the harm it was trying to avoid, it's very clear that it would also apply in a case of retaliatory, to retaliation in general. I just don't see how it can be read to also, to mean that it's okay if you do it as an arrest but you can't do it as a fraudulent ethics investigation to cause a prosecution. The concerns there are identical. Counsel, the concerns that aren't identical insofar as the whole line of retaliatory prosecution cases are also premised on both the presumption of regularity that we afford to prosecutions as well as the additional causal complexities when you have things like a grand jury, a prosecutor in addition to the police. Is there any case you're aware of that has applied Lozman to the retaliatory prosecution context like on the circuit level? I know, Your Honor, I'm not aware of any, but I do believe it absolutely is warranted here. This is the same sort of concern that was addressed by the Supreme Court with regard to retaliatory arrests and retaliatory prosecutions in Reichel, Nieves, Hartman. At the end of the day, the court realized it's the same concerns and the same standards were applied in retaliatory arrest cases as they are to retaliatory prosecution cases. This presents a situation that I believe is no different, especially with the court's recognition of how important and how pernicious an official retaliatory policy by municipal lawmakers is and the need to create a remedy. As for this claim that they knew about USA Roofing, but they didn't know that USA Roofing was on the subcontract, again, this is a Rule 56 issue. Inferences can be made in Mr. Petschie's favor, which when you combine the fact that all defendants have admitted to knowing that USA Roofing was Jack Petschie and they all had access to documents that listed USA Roofing as a subcontractor on the contract, presumably something that all of these people had reviewed, and if not presumably, then at least it must be presumed for Rule 56 purposes that they did know and that Mayor Ruby, for instance, did know all along that this contract was held by Jack Petschie, but simply withheld his knowledge of that until it was politically convenient, i.e. six days after the Four Seasons issue came out. We submit there is more than simply temporal proximity here. There are text messages from Dave Maddy. There are the political context here. Again, my time is up, but we have submitted more than temporal proximity to create this inference, and for that reason we ask, because of the application of Lozman and for the reasons in our briefing, that the summary judgment grant be reversed. Thank you. Thank you for your argument. Case will be submitted.